CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 23, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 7:19-cr-00097 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| WENDELL DEFOREST BALL, III, ) | Chief United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a *pro se* motion to reduce sentence filed by defendant Wendell Deforest Ball. (Dkt. No. 71.) Ball asks the court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) on compassionate release grounds. The Federal Public Defender declined to file a supplemental motion on Ball's behalf, and the United States has filed a response in opposition. (Dkt. No. 79.) For the reasons discussed herein, the court will deny Ball's motion.

I.  BACKGROUND

Ball was charged in a multi-count indictment and pled guilty to two counts: (1) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 7); and (2) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 5). (Dkt. Nos. 55–59.) On January 4, 2021, this court sentenced Ball to a 60-month sentence on each count, to run consecutively, for a total sentence of 120 months' imprisonment. The court also imposed a 4-year term of supervised release on each count, to run concurrently, a fine of $200, and a special assessment of $200. (Dkt. Nos. 66, 69.)

In his motion for compassionate release, Ball identifies four circumstances that he

alleges render him eligible for a reduced sentence.[1]  They are: (1) his mother's significant illness; (2) the fact that he was previously housed at a Bureau of Prisons (BOP) facility where there was a carbon monoxide leak; (3) his having completed more than half of his 120-month sentence; and (4) his efforts at rehabilitation while in custody; and (5) the fact that his child's mother died from an overdose "last year."  He also expresses that he is remorseful for his conduct and "promise[s] [that he] will not any commit any further crimes or engage into any other criminal conduct" if released.  (Dkt. No. 71-2, at 1.)

The United States opposes any relief.  (Dkt. No. 79.)  It first argues that Ball has failed to exhaust his administrative remedies and thus that his motion is not properly before the court.  It further argues that even if he had exhausted, the motion should nonetheless be denied on the merits.  (Opp'n 3–4.)

## II.  DISCUSSION

### A. Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances.  As amended by the First Step Act and in pertinent part,[2] the statute

> authorizes a court, in its discretion, to reduce a term of imprisonment after it has (1) considered the [18 U.S.C.] § 3553(a) factors for imposing a sentence, (2) found that "extraordinary and compelling reasons warrant such a reduction," and (3) found that "such a

---

[1] In a letter to the court attached to his motion, Ball also references the death of his child's mother from an overdose "last year."  The letter explains why incarceration has been difficult for him and expresses his remorse over his crimes. (Dkt. No. 71-2).  Unlike the four grounds mentioned in his motion, Ball does not expressly argue that this qualifies as an extraordinary and compelling circumstance, and it is unclear whether the child's mother was the child's caregiver, such that her death might implicate U.S.S.G. § 1B1.13(b)(3)(A).  There is simply not enough information in what he has filed to determine this.  Indeed, the Presentence Investigation Report (PSR) indicates that he has four children from previous relationships, and Ball's letter does not identify the child or mother by name.

[2] Prior to the First Step Act of 2018, only the BOP could seek relief in court under the statute.  The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

2

reduction is consistent with applicable policy statements issued by the Sentencing Commission."

*United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025) (quoting 18 U.S.C. § 3582(c)(1)(A)); *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024).  In 2023, the Commission issued an amended policy statement setting forth a non-exhaustive list of circumstances that may individually or in combination constitute "extraordinary and compelling" reasons for a sentence reduction.  *See* U.S.S.G. § 1B1.13.  That policy statement governs Ball's motion.  *See Crawley*, 140 F.4th at 170.

The defendant bears the burden of showing that extraordinary and compelling reasons exist.  *See United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release").  And "[a] movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence." *Centeno-Morales*, 90 F.4th at 279.

**B. Exhaustion**

Section 3582(c) also requires administrative exhaustion before a defendant may file a motion requesting relief under it, although that requirement is a "'non-jurisdictional claim-processing rule' that can be waived or forfeited if not timely raised."  *United States v. Davis*, 99 F.4th 647, 653 n.2 (4th Cir. 2024) (quoting *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021)).  Specifically, a defendant must request that the BOP bring a motion on his behalf and then either "fully appeal" the BOP's failure to do so or allow 30 days to lapse without a response.  § 3582(c)(1)(A).

Ball asserts that he has properly exhausted his administrative remedies by asking the warden at FCI Beckley for early release and waiting thirty days, and he references an attached

document. (Mot. 2.) As the United States notes, however, none of the attachments to his motion support his claim that he submitted materials to the warden at FCI Beckley. Moreover, the United States represents that "it has confirmed with officials at FCI Beckley that Ball did not file a reduction in sentence (RIS) request during the time he was housed at Beckley between August 13, 2024 and May 28, 2025." (Opp'n 3 & Ex. A.) A "similar check" confirmed that Ball never filed an RIS request at his prior facility, FCI McDowell. (*Id.* & Ex. B.) Ball did not file any reply in response to the opposition, so he has not disputed or otherwise explained the evidence presented by the United States.

As it is Ball's burden to show he has exhausted and he failed to do so, his motion is subject to dismissal for failure to exhaust. That could be the end of the matter. Indeed, the United States urges the court to deny the motion "without consideration to the merits of [Ball's] claims." (Opp'n 3.) Nonetheless, even if he had properly exhausted, the court concludes that Ball has failed to show extraordinary and compelling grounds sufficient to render him eligible for a sentence reduction. Thus, his motion could be denied on this alternative ground, as well. Lastly, the court concludes that the § 3553(a) factors do not support a reduced sentence.

**C. Extraordinary and Compelling Reasons**

As noted, Ball's compassionate release motion offers four bases for the requested relief: (1) his mother's illness; (2) a carbon monoxide leak at a prior prison facility; (3) the fact that he already has served roughly half of his sentence; and (4) his rehabilitation efforts. The court addresses each.

   **1. Mother's serious health condition**

Ball first notes that his mother has been diagnosed with "incurable lung disease" and later references "cancer treatment centers." He explains that he would be very helpful to her while

undergoing treatment, by taking her to appointments and taking care of things at home, such as cleaning, running errands, and making sure that she takes her medicine.

Under the relevant policy statement, a defendant may be able to show extraordinary and compelling circumstances where there is evidence that the defendant's parent is incapacitated and the defendant would be the only available caregiver for the parent. U.S.S.G. § 1B1.13(b)(3)(C). For several reasons, Ball's assertions do not satisfy the policy statement.

First, although Ball has included an "affidavit" signed by him stating that all the information in the compassionate release motion is true and correct (Aff. 1, Dkt. No. 71-1), that affirmation is not under oath. Second—and more importantly—he fails to provide evidence or detail concerning his assertions. For example, he has provided no medical documentation or other supporting evidence regarding his mother's diagnosis, and he has failed to meet his burden to show that she is incapacitated. As another judge of this court recently explained, although the guidelines do not provide a definition of "incapacitation," many courts have looked for guidance to the definition of "incapacitation" as described in the Bureau of Prisons program statement or to the Uniform Probate Code. *United States v. Mahone*, No. 5:12-CR-27, 2025 WL 495376, at *4–5 (W.D. Va. Feb. 13, 2025) (collecting authority). Those definitions render incapacitation a "high bar." *See id.* (citation omitted). BOP Program Statement 5050.50, which describes the procedures the BOP uses to implement compassionate-release requests, defines "incapacitation" as "a serious injury, or a debilitating physical illness" causing the person to be "completely disabled" meaning he or she "cannot carry on any self-care and is totally confined to a bed or chair." BOP Program Statement 5050.50, at 10. The Uniform Probate Code defines the term even more narrowly—appropriate in that granting guardianship over another adult should be an extraordinary action—requiring that an individual be "unable to receive and evaluate information

5

or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care . . . ." *Mahone*, 2025 WL 495376, at *4 (citations omitted). Although these definitions are not binding, they do provide guidance. And Ball has not alleged or shown that his mother's condition is even close to the level of incapacitation described in those sources.

Third, Ball has not provided any evidence to support his assertion that he is the only available caregiver and that his brothers and sisters are unable to provide the care she needs because of their personal lives. (*See* Mot. at 3 (containing assertion).) As the United States notes, the PSR indicates that he has a sister who has a master's degree in education and works as a teacher in Richmond. (PSR ¶ 40, Dkt. No. 63.) Even if this sister is unwilling to help their mother, the law requires Ball to show that he is the "only available" caregiver. *See United States v. Conley*, No. 1:11-cr-00037-002, 2024 WL 490337 (W.D. Va. Feb. 8, 2024) (denying compassionate release sought on grounds of wife's severe medical condition, where sons were available to care for her).

For support, Ball cites to a number of district court decisions from all over the country. (Mot. 2.) Those cases are not binding on this court. Furthermore, those courts were ruling—as this court must—based on an individualized determination about the evidence before them. Here, especially given the lack of any supporting evidence, the court finds that Ball has failed to meet his burden as to this ground.

**2. Carbon monoxide leak**

Ball also maintains that there was a carbon monoxide leak in his housing unit while he was incarcerated at FCI McDowell and that he was "so scared for [his] life that [he] didn't feel like [he] was going to make it home." (Dkt. No. 71-2, at 1.) He alleges that other inmates

6

required hospitalization or treatment and that FCI McDowell "failed and dishonored the Courts and the public." (Mot. 4.)

The United States correctly notes that Ball does not allege that he ever became ill because of the leak. He states that "numerous inmates was [sic] hospitalized and treated with medication for exposure to particles of carbon monoxide in which he is still experiencing long lasting side effects to-date. [sic]" (*Id.*) It does not appear that the "he" referenced in that sentence is Ball; instead, the court construes that as a reference back to the "numerous inmates." Furthermore, although he claims that the incident "will be remembered for life," he does not state by whom. Thus, it appears to the court that this ground for relief does not implicate the Ball's medical circumstances specifically. Either way, he has not provided any evidence to support any such assertion.

Further, to the extent that Ball is challenging the conditions of confinement, such claims which generally are brought through "a § 1983 suit or a *Bivens* action." *Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2019).³ In any event, the court does not find this circumstance to be "extraordinary and compelling," either alone or in conjunction with any others.

3. **Percentage of sentence served**

Ball also points out that he has served more than half of his 120-month sentence, and he advances this fact as an extraordinary and compelling reason for the court to find him eligible for a reduced sentence, either alone or when combined with his other grounds. (Mot. 3.) In response, the United States insists that it has not found any "legal precedent to support the motion that the length of time remaining on [a] sentence, or percentage of sentence completed,

---

³ The court recognizes, though, the limited availability of any *Bivens*-type remedy. *See Goldey v. Fields*, 606 U.S. 942, 944–45 (2025) (recognizing the narrowing of such causes of action and summarizing that the court had consistently declined to extend *Bivens* to new contexts "[f]or the past 45 years").

standing alone constitutes an extraordinary and compelling 'other reason' under the meaning of U.S.S.G. § 1B1.13." (Opp'n at 5 n.5.)

Ball has not identified any authority to the contrary, and the court is aware of none. The fact that he has served slightly over half of his sentence is not—alone or in combination with other factors—extraordinary and compelling.

### 4. Rehabilitation

Ball also points to his rehabilitation efforts while in prison, but Congress has specified "that rehabilitation *alone* cannot be considered an extraordinary and compelling reason for release, [although] it may be considered as one factor among several under § 3582(c)(1)(A)." *United States v. Davis*, 99 F.4th 647, 659 (4th Cir. 2024) (citation omitted). Additionally, his rehabilitation—which includes his taking various classes, completing programs, and incurring only "minor infractions"[4]—is typical and expected conduct of prisoners. It is not the type of exemplary or unusual rehabilitation that courts have found could support a reduction in sentence under the compassionate release statute. *Cf. id.* at 660–61 (concluding that the district court erred in failing to address defendant's rehabilitation argument where defendant had a decade of mitigation evidence, including documentary evidence supporting his coursework and good behavior, a glowing letter from his employer, and where there had been "substantial changes" in the law that, applied to defendant, would have reduced his guideline range from 188–235 months down to 92–115 months); *United States v. Vaughn*, 62 F.4th 1071, 1071 (7th Cir. 2023) ("Taking classes while incarcerated is common rather than extraordinary."). Moreover, even if considered with the other factors already considered, the court does not find extraordinary and compelling

---

[4] This is Ball's characterization. The United States has not provided a copy of his disciplinary records, but it represents that "he was sanctioned for refusing to obey an order on April 1, 2025, for fighting on February 6, 2023, and for being in the wrong unit on July 28, 2021." (Opp'n 6 n.3.)

circumstances. Thus, his rehabilitation efforts do not render him eligible for a reduction in sentence, either.

Furthermore, as the court discusses next, even if he could establish such an extraordinary and compelling reason, the court would not grant any relief based on the § 3553(a) factors.

**D. Section 3553(a) Factors**

When determining whether a sentencing reduction is warranted, the court must consider any applicable sentencing factors under 18 U.S.C. § 3553. Those factors include:

- the nature and circumstances of the offenses;
- the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment for the offenses, to deter criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational, vocational and other correctional treatment services;
- the kinds of sentences available and the sentencing range for the offenses; and
- the need to avoid unwarranted sentence disparities.

18 U.S.C. § 3553(a).

The nature and circumstances of the offenses are not favorable, particularly in that Ball possessed firearms while selling drugs, which increases the risk of harm to all those involved or unlucky enough to be in the area.

His history and characteristics are largely unfavorable, too. The court recognizes that he had a difficult childhood and has abused illegal substances since an early age. And the court took those factors into account when imposing a sentence at the lowest end of the guideline range. (*See* Statement of Reasons 5, Dkt. No. 70.)

But he was convicted as an adult when he was only 18 years old—for two counts of selling cocaine. (PSR ¶ 27.) He was sentenced to five years initially, but that was suspended on the condition that he complete a diversion center program, which he failed to do. Instead, he was

9

involved in a fight, struck another participant, and refused to obey orders to stop fighting. (*Id.*) Throughout his service of that sentence, he was given opportunities to stay on probation, but his probation was revoked multiple times. (*Id.*) He repeatedly failed drug tests, failed to report for drug screens, and failed to abide by the conditions of his probation. (*Id.*) Thus, he has a demonstrated history of disregarding the law and has shown an inability or unwillingness to alter his conduct, even when the prospect of imprisonment loomed.

      Equally as troubling, his other convictions show a propensity for violence, particularly his convictions for assault and battery on a family member and a second for assault on a family member. The assault and battery charges stemmed from an incident with his girlfriend, who reported that he became angry with her and began striking her. When she left to call the police, he pushed her onto the bed and punched her in the jaw. (PSR ¶ 29.) On another occasion, more than two years later, the same victim reported that Ball came to her house to drop off their children and threatened to shoot her. (PSR ¶ 30.) He also had a prior charge of assaulting a family member nolle prossed. (PSR ¶ 35.)

      Furthermore, Ball received a great benefit from the plea agreement, which dismissed several counts that could have led to a much higher sentence. (PSR ¶ 54.) And the court imposed the minimum statutory sentence that could be imposed on both counts. Ball's plea agreement specifically stated his acknowledgement that the statutory minimum for both offenses was five years and that the court was required to impose the § 924(c) count consecutively. (Plea Agreement 1–2, Dkt. No. 56.) Thus, he received the lowest possible sentence he could have believed he would get.

      Indeed, granting his requested relief of releasing him now would cut his sentence nearly in half. That would undermine the expectations of the parties in negotiating the plea agreement,

and it would effectively be sentencing Ball for only one of his convictions, both of which carry a 60-month mandatory minimum, with the § 924(c) count required to be consecutive. Given the other § 3553(a) factors discussed above, such a reduction is not warranted. A sentence of 120 months continues to be sufficient, but not greater than necessary, to accomplish the listed purposes of sentencing.

In sum, the court would not reduce Ball's sentence even if he could show extraordinary and compelling circumstances on one or more of the grounds discussed *supra* at Section II-C.

### III.  CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Ball's motion for a reduced sentence based on the compassionate release statute (Dkt. No. 71) is DENIED. The clerk is directed to provide a copy of this order to all counsel of record and directly to Ball.

Entered: September 23, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge